UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| The University of Chicago, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | 10 C 4843 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| Faculty Association of the University of Chicago Laboratory Schools, Local 2063, American Federation of Teachers, | ) ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff The University of Chicago filed this action against Defendant Faculty Association of the University of Chicago Laboratory Schools, Local 2063, American Federation of Teachers, alleging that the non-renewal of Mark Dreessen's teaching contract is not arbitrable under the parties' Collective Bargaining Agreements ("CBA"). The University has moved to stay arbitration proceedings pending the outcome of this action. The motion is denied.

### BACKGROUND

In December 2009, the University of Chicago Laboratory Schools informed Dreessen, a member of a bargaining unit represented by the Faculty Association, that his teaching contract would not be renewed. Dreessen and the Faculty Association responded with written grievances claiming that the non-renewal, as well as certain events preceding the non-renewal, violated the CBAs. The University replied that Dreessen's non-renewal was not subject to the CBAs' grievance-arbitration provisions. In June 2010, after a Committee of the Laboratory Schools' Board of Trustees declined to reverse Dreessen's non-renewal, the Faculty Association

1

submitted two arbitration demands to the American Arbitration Association ("AAA") on behalf of Dreessen. The University and the Faculty Association have since engaged in the process of selecting arbitrators and hearing dates, with the University doing so under protest and without waiving its rights to challenge the dispute's arbitrability. Hearing dates have been set for January 24-25, 2011.

The University filed this lawsuit on August 2, 2010. Invoking Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the University seeks a permanent stay of arbitration proceedings and a declaration that the dispute is not arbitrable under the CBAs. The day after filing suit, the University moved to stay the arbitration proceedings pending the this Court's determination of arbitrability. The motion is fully briefed and ripe for resolution.

## DISCUSSION

The University's stay motion faces two insurmountable hurdles: the jurisdictional bar posed by the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, and the University's failure to show irreparable harm from the denial of a stay. Both hurdles are plainly set forth in *AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758 (7th Cir. 2003).

### A. The Norris-LaGuardia Act

As in this case, the employer in *AT&T Broadband* brought suit to halt arbitration proceedings commenced by a union, and the union responded that injunctive relief was barred by Section 1 of Norris-LaGuardia, which provides that "[n]o court of the United States … shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case

2

involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101. The Seventh Circuit agreed with the union, reasoning that because "arbitration of a labor dispute is a matter 'involving or growing out of a labor dispute,'" Norris-LaGuardia jurisdictionally barred the employer's request to halt the arbitration. *AT&T Broadband*, 317 F.3d at 759-60 (citing cases); *accord, e.g.*, *Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union*, 425 F.3d 938 (11th Cir. 2005). The University advances three reasons why *AT&T Broadband* does not bar a stay in this case. None has merit.

First, the University contends that *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010), *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), and *Preston v. Ferrer*, 552 U.S. 346 (2008), undermine *AT&T Broadband* by reiterating the cardinal principle that, absent a contrary agreement, arbitrability is a question for the court, not the arbitrator. That principle, the University maintains, requires the court to stay arbitration until it renders a decision on arbitrability.

The University's submission ignores the fact that the principle upon which it relies—that courts must decide arbitrability—prevailed with equal force in 2003, when *AT&T Broadband* was decided. Citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986), the Seventh Circuit recognized "that, unless the parties agree otherwise, arbitrability is a question for a judge to decide." *AT&T Broadband*, 317 F.3d at 761. Like the University here, the employer in *AT&T Broadband* argued that the "court decides arbitrability" principle can have force only if coupled with the court's ability to stay arbitrations pending a judicial decision on arbitrability. The Seventh Circuit flatly rejected that argument:

> The linchpin of AT&T's argument is that if the employer has a substantive right (here, to a judicial determination about arbitrability) then there must

3

> be a remedy by way of injunction. It would be only a small step to plug in other substantive rights. Suppose the employer has a substantive right to be free of secondary boycotts. If AT&T's syllogism is appropriate, then courts must have the authority to enforce this right by issuing injunctions. Bye, bye, Norris-LaGuardia Act, for this was the very way in which courts evaded § 20 of the Clayton Act! Yet in *Burlington Northern* [*R.R. v. Maintenance of Way Employees*, 481 U.S. 429 (1987),] the Supreme Court unanimously held that the Norris-LaGuardia Act forbids injunctive relief against a secondary boycott, despite the fact that the boycott violated the employer's substantive rights.
>
> \* \* \*
>
> What Congress established through the Norris-LaGuardia Act is that a substantive right does *not* imply an injunctive remedy.

*Ibid*. (emphasis added). None of the Supreme Court's subsequent arbitration decisions undermine this analysis.

Second, the University maintains that *Boys Market, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970), which despite Norris-LaGuardia permits federal courts to enjoin *strikes* that violate collective bargaining agreements in which unions agree to resolve disagreements through arbitration rather than through strike, ought to be expanded to grant courts the power to enjoin *arbitrations* falling outside the scope of a collective bargaining agreement's arbitration provision. *See also Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457-59 (1957) (Norris-LaGuardia does not bar courts from compelling arbitration of grievance disputes where arbitration is called for by a collective bargaining agreement). The University's position, whatever its merits as a policy matter, is foreclosed by *AT&T Broadband*, which explained that the Supreme Court has cabined *Boys Market* "to one kind of agreement (the trade of arbitration for a no-strike promise)," and that expanding *Boys Market* in the manner the University suggests

4

would "wipe out the core of the Norris-LaGuardia Act." 317 F.3d at 761. It goes without saying that this Court may not expand *Boys Market* in a manner rejected by the Seventh Circuit.

Third, the University contends that its dispute with the Faculty Association, because it concerns only the non-renewal of a single teacher's contract, does not present a "labor dispute" within the meaning of Norris-LaGuardia. As noted above, Norris-LaGuardia generally bars injunctive relief "in a case involving or growing out of a labor dispute." 29 U.S.C. § 101. "Labor dispute," in turn, is defined as follows:

> A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) *between one or more employers or associations of employers and one or more employees or associations of employees*; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

29 U.S.C. § 113(a) (emphasis added). As the emphasized text shows, the term "labor dispute" encompasses a situation where, as here, one employee has a dispute with one employer regarding rights and obligations under a collective bargaining agreement. *See Rueter v. Skipper*, 4 F.3d 716, 719 (9th Cir. 1993) (dispute involving one employee is a "labor dispute" where it is "directly related to the terms and conditions of her employment").

The University's contrary position cannot be reconciled either with the plain statutory text or with the settled principle that "the term 'labor dispute' must not be narrowly construed because the statutory definition itself is extremely broad and because Congress deliberately

5

included a broad definition … ." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982). As the Supreme Court explained, "[t]he critical element in determining whether the … Norris-LaGuardia Act appl[ies] is whether the employer-employee relationship [is] the matrix of the controversy." *Ibid*. (internal quotations omitted). Where an employer and a union "are the disputants, and their dispute concerns the interpretation of the labor contract that defines their relationship," a "labor dispute" exists. *Id*. at 713. That is precisely the situation posed here.

For these reasons, the Norris-LaGuardia Act compels the Court to deny the University's motion to stay the forthcoming arbitration.

### B. Failure to Show Irreparable Harm

Even if Norris-LaGuardia did not apply here, the University may obtain a stay only upon demonstrating that it would suffer irreparable injury absent a stay. *See AT&T Broadband*, 317 F.3d at 762. The University contends that the nonrecoverable costs of arbitrating a dispute that might later be found non-arbitrable constitutes irreparable harm. But the Seventh Circuit squarely held in *AT&T Broadband* that the costs of arbitrating a potentially non-arbitrable dispute does not qualify as irreparable injury:

> [T]he premise of AT&T's position—that if the Norris-LaGuardia Act were out of the picture it would be entitled to injunctive relief against an arbitration—is incorrect. Where's the irreparable injury? If AT&T loses in the arbitration, the union will seek to enforce its victory; AT&T can defend on the theory that it had not agreed to arbitrate this kind of dispute. Delay would not cause irreparable injury, so there is no justification for an injunction. All AT&T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury.

\* \* \*

> [AT&T's] request for an anti-arbitration injunction is more a breach of
> faith with the union than it is an effort to avoid 'irreparable injury.'
> AT&T agreed to, and must abide by, a system that postpones until
> after the arbitral decision any judicial review of the question whether a
> particular dispute was arbitrable.

*Id*. at 762 (citing cases).

The University offers no basis to conclude that the circumstances present in *AT&T Broadband* are any different than those presented here. Accordingly, the University's stay motion is denied on the separate and independent ground that it has failed to demonstrate irreparable injury.

## CONCLUSION

The parties' submissions on the University's stay motion raise two other issues. First, the University's reply brief contends that if a stay is not entered, the Court nonetheless should resolve whether the dispute is arbitrable under the CBA. Second, the Faculty Association's surreply brief responds that the Court should stay these proceedings pending completion of the arbitration. The Court respectfully requests that the parties address those issues in greater detail in briefing the University's recently filed motion for summary judgment. In addition to presenting argument on the arbitrability question itself, the Faculty Association's response brief and the University's reply ought to address whether the Court should (i) determine arbitrability prior to the arbitration or, rather, (ii) stay these proceedings pending completion of the arbitration, thereby permitting the arbitrator to consider arbitrability in the first instance. At this point, the Court holds only that the University's motion to stay arbitration is denied.

October 28, 2010

_____
United States District Judge